UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 10-80981-Civ-Cohn/Seltzer

JONATHAN DAVIDOFF,

    Plaintiff,
v.

BANK OF AMERICA CORPORATION and
FIA CARD SERVICES, N.A.,

    Defendants.
_____/

**ORDER DENYING MOTION TO ENFORCE SETTLEMENT**
**ORDER DENYING MOTION TO AUTHORIZE DISCLOSURE OF RELEASE AND**
**CONFIDENTIAL SETTLEMENT AGREEMENT**

**THIS CAUSE** is before the Court upon Defendants Bank of America Corporation and FIA Card Services, Inc.'s Motion to Enforce Settlement Agreement [DE 19] and Motion to Authorize Disclosure of Release and Confidential Settlement Agreement [DE 20], Plaintiff's "Reply"[1] Brief in Opposition to Defendants' Motion to Enforce Settlement Agreement [DE 28/32], Plaintiff's Declaration in Opposition to Defendants' Motion to Enforce Settlement Agreement [DE 29], Defendants' Reply [DE 35], Plaintiff's Motion for Leave to File Surreply [DE 36], Defendants' Opposition to the Motion for Leave to File Surreply [DE 38], and Plaintiff's Reply [DE 40].  These motions became ripe on March 7, 2011.

**I.  BACKGROUND**

Plaintiff filed this action against Bank of America ("BOA") and FIA Card Services ("FIA") seeking a declaratory judgment and specific performance that his accounts were previously settled and paid in full and that BOA is required to report to all credit bureaus

---

[1] This filing is actually a response to the motion.

that the account was paid in full.  The Complaint also contains claims seeking damages for slander of credit, breach of contract, breach of a prior settlement agreement, violations of Florida's Deceptive and Unfair Trade Practices Act, Consumer Credit Practices Act, and the federal Fair Credit Reporting Act, and return of monies paid under Fla. Stat. § 673.3111.  After FIA initially moved to dismiss the action, on December 10, 2010, the parties filed a Joint Status Report indicating that the case was settled, and FIA withdrew the motion to dismiss [DE 15].  However, a dispute arose about whether the settlement was finalized.  As the dispute does not involve contested facts, an evidentiary hearing is not required.[2]

On December 7, 2010, Plaintiff[3] executed and delivered the settlement agreement by electronic mail to Defendants' counsel with the condition that Plaintiff must approve the exhibits (credit deletion letters that were exhibits to the agreement) before the executed agreement would be effective.  Exhibit 1 to Plaintiff's Response [DE 28-1].   Plaintiff also directed Defendants' counsel to hold the executed agreement "in trust," apparently meaning that the executed agreement could not be given to Defendants themselves.  Plaintiff also stated in this email that he had the right to withdraw his acceptance prior to Defendants' execution of the agreement.  Id.

On December 8, 2010, Defendants' counsel responded by stating that he will "send this over to the bank for signature."  Exhibit 2 to Plaintiff's Response (all of Plaintiff's Exhibits can be found at DE 28-1).  Plaintiff reminded counsel that he "cannot

---

[2] The Court concludes that the contents of the confidential settlement itself are not necessary for resolution of the motion to enforce settlement.

[3] Plaintiff Jonathan Davidoff is an attorney representing himself *pro se*.

give them executed until they execute." Id.  On Friday afternoon, December 10, 2010, Plaintiff sent an email to Defendants' counsel stating that they needed a settlement signed today, or "[the settlement would be] off the table!"  Exhibit 3 to Plaintiff's Response.  Defendants' counsel stated that there "was a change in position of the person I was dealing with" who would only sign for FIA.  Id.  Plaintiff expressed surprise, whereupon Defendants' counsel sent an email to Plaintiff asking if he would accept a signature by "FIA alone."  Id.  On December 16, 2010, Plaintiff states that he spoke with Defendants' counsel by telephone and Defendants' counsel stated that the person who could sign for BOA was out of town until the next day.  Declaration of Jonathan Davidoff, ¶ 16 [DE 29].

On Friday, December 17, 2010, at 3:08pm, Plaintiff revoked his offer to settle the matter and requested immediate return of the executed settlement agreement.  Exhibit 4 to Plaintiff's Response [DE 28-1].  A few minutes later, Defendants' counsel sent by email the settlements signed by Defendants and asked Plaintiff if he would "rescind his rejection."  Exhibit 5.  Less than an hour later, Defendants' counsel advised Plaintiff that the credit bureau deletion letters will be void if Plaintiff failed to withdraw his revocation.  Exhibit 6.  On December 22, 2010, Defendants' counsel notified Plaintiff that the Bank had performed by sending the notices of deletions to the credit bureaus and sought Plaintiff's authorization to file a notice of dismissal with the Court.  Exhibit 2 to Defendants' Motion [DE 19-3].  Plaintiff responded to this email by stating that he does not authorize the filing and is "not really inclined to accept its offer."  Exhibit 3 [DE 19-4].

On December 27, 2010, Plaintiff sent a new proposal to Defendants' counsel while expressing frustration over the prior month's negotiations over the agreement.

This email also warned that if the credit account deletions were revised, that Plaintiff would consider such action as "another violation." Exhibit 9 to Plaintiff's Response [DE 28-1]. Defendants responded by stating that they believed that they had completed the settlement on December 17. Id. On December 30, 2010, in response to Plaintiff's demand that he return the escrowed documents (Plaintiff's acceptance from December 7), Defendants' counsel informed Plaintiff that because Plaintiff had accepted the benefits of the agreement and had threatened to sue if the deletions were retracted, that Defendants would be moving to enforce the agreement. Exhibit D to Defendants' Reply [DE 35-4]. Plaintiff informed Defendants' counsel that the disputed accounts remained open on his credit reports. Exhibit 7 to Plaintiff's Response [DE 28-1].

Defendants move to enforce the settlement agreement and to authorize disclosure of the confidential settlement agreement. Plaintiff opposes the motion to enforce the settlement.

## II. ANALYSIS

The law regarding interpretation of settlement agreements in the Eleventh Circuit Court of Appeals is that a "settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905-06 (11th Cir. 1987); Wong v. Bailey, 752 F.2d 619, 621 (11th Cir.1985); see also Resnick v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347 (11th Cir. 2000) (settlement agreement resolving federal claims still interpreted under Florida law). Under Florida law:

> The party seeking judgment based on a settlement has the burden of
> establishing assent by the opposing party and must establish that there
> was a meeting of the minds or mutual or reciprocal assent to certain

4

>definite propositions.  To result in a contract, an acceptance of an offer must be absolute and unconditional, identical with the terms of the offer and in the mode, at the place and within the time expressly or impliedly required by the offer.  A counteroffer operates as a rejection of a preceding offer.

Ribich v. Evergreen Sales & Serv., Inc., 784 So. 2d 1201, 1202 (Fla. Dist. Ct. App. 2001) (internal citations omitted).

Defendants' motion takes the position that the parties entered into a settlement agreement on December 17, 2010, and that Defendants began performance by notifying the credit reporting agencies to delete records of Plaintiff's accounts.  Exhibits A, B, and C to Defendants' Reply [DE 35-1, 35-2, 35-3].  Defendants contend that Plaintiff has accepted the benefit of these communications, and that the combination of Plaintiff's written acceptance of the agreement and Defendants' performance under that agreement preclude Plaintiff from changing the terms of the agreement.   Moreover, Defendants believe that Plaintiff's subsequent conduct ratified the agreement, including his threat to sue if Defendants retracted the account deletions, relying upon Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306, 313 (Fla. 2000).

Plaintiff contends that there was no valid acceptance from Defendants because Plaintiff revoked his offer prior to Defendants' acceptance.  Plaintiff further asserts that he conditioned his own acceptance upon a requirement that Defendants send to him the credit deletion letters that were exhibits to the agreement prior to final acceptance, that Defendants' counsel should not have shared his executed copy of the agreement with Defendants, and that unilateral performance by Defendants cannot overcome the requirement that all elements of contract formation be proven.

The Court does find that Plaintiff had explicitly conditioned his acceptance upon

5

his review of the credit deletion letter. Defendant has not provided any evidence that this condition was satisfied.[4] Therefore, there was not an unconditional acceptance of an offer identical with the terms of the offer. Second, Plaintiff clearly revoked his acceptance prior to Defendants' delivery of their acceptance of the offer. As of the end of the day on December 17, 2010, no contract had been formed for both reasons.

Turning next to Defendants' assertion that Plaintiff's subsequent conduct ratified the agreement agreed to at different times by the parties, the facts of this case are clearly distinguishable from Mazzoni. The plaintiffs in Mazzoni brought a damages claim for fraudulent inducement to settle while retaining the proceeds from the prior settlement. The Supreme Court stated that Florida law provided for an election of remedies for such a claim: either rescission repudiating the transaction and tender of the benefits received under the settlement contract; or damages, whereby the party ratifies the contract. Mazzoni Farms, 761 So. 2d at 313. Plaintiff in the present case has submitted evidence that any benefit he might have received was temporary, in that by December 30, 2010, Plaintiff informed Defendants' counsel that "the three credit accounts remained on my credit report." Davidoff Declaration, ¶ 27. Therefore, Defendants have not met their burden to show that Plaintiff retained any benefit from

---

[4] The Court does not consider Defendants' counsel's sharing of Plaintiff's December 7 executed agreement with his clients to be relevant. An attorney's duty to his own client trumps any conditions placed upon him by the opposing side, absent any misrepresentation. Schlapper v. Maurer, 687 So. 2d 982, 984 (Fla. Dist. Ct. App. 1997). No prejudice resulted to Plaintiff by counsel's sharing of the executed agreement.

the purported contract.[5]

### III.  CONCLUSION

The Court concludes that Defendants have failed to show that a contract was formed under Florida law.  In addition, Defendants have not shown that Plaintiff ratified the agreement by subsequent conduct.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Bank of America Corporation and FIA Card Services, Inc.'s Motion to Enforce Settlement Agreement [DE 19] is hereby **DENIED**;

2. Defendants' Motion to Authorize Disclosure of Release and Confidential Settlement Agreement [DE 20] is hereby **DENIED**;

3. Plaintiff's Motion for Leave to File Surreply [DE 36] is hereby **DENIED as moot**, as the Court is denying the motion to enforce the settlement;

4. Defendant FIA Card Services must respond to the Complaint by March 30, 2011;

5. Magistrate Judge Seltzer shall set this case on his next calendar for scheduling conferences, and the Court will separately enter an order resetting the trial date.

**DONE AND ORDERED** in chambers in Fort Lauderdale, Broward County, Florida, this 16th day of March, 2011.

_____
JAMES I. COHN
United States District Judge

copies to: counsel of record

---

[5] In addition, a review of the parties' emails submitted by both sides reveals that all of Plaintiff's communications evidence a belief that no contract was formed on December 17.